(January 24, 1899.)

## WELLS, FARGO & CO. v. ALTURAS COMMERCIAL COMPANY (MERCHANT & CO., INTERVENERS).

[56 Pac. 165.]

CHATTEL MORTGAGE—RECORDING—ACTUAL NOTICE.—A junior mortgagee, who takes his mortgage with actual notice of the existence of another mortgage upon the same property, and with the understanding that the lien of his mortgage is subject to that of such former mortgage, is not entitled to precedence on the grounds that such former mortgage was not filed of record in the proper county recorder's office prior to the time that his mortgage was filed in such office.

SAME—GOOD BETWEEN PARTIES—GOOD AGAINST JUNIOR MORTGAGEE WHO HAS ACTUAL NOTICE.—A chattel mortgage upon a stock of merchandise, under the terms of which the mortgagor retains possession and sells in the usual course of trade, applying proceeds

of sale less expenses thereof to the mortgage debt, is valid as between the parties and privies thereto, and as against junior mortgages of the same kind, taken with actual notice of such former mortgage.

SAME—ESTOPPEL.—A mortgagee who takes a mortgage upon a stock of merchandise, which mortgage authorizes the mortgagor to retain possession of the mortgaged chattels, and sell the same in the usual course of business, and who knows of a similar, prior existing mortgage upon the same chattels, and agrees that his mortgage lien shall be subject to the lien of such former mortgage, is estopped from questioning the validity of such former mortgage.

(Syllabus by the court.)

APPEAL from District Court, Blaine County.

Brown & Henderson and Lyttleton Price, for Appellants.

As between the different mortgagees litigating here, it is entirely immaterial as to whether these mortgages were fraudulent as to attaching creditors or not. Such a mortgage permitting the mortgagor to remain and sell the goods is not void between the parties, but may be enforced at any time by the mortgagee. (*Bank of Ukiah v. Moore,* 106 Cal. 673, 39 Pac. 1071; *People's Sav. Bank v. Bates,* 120 U. S. 556, 7 Sup. Ct. Rep. 679; *Tregear v. Etiwanda W. Co.,* 76 Cal. 538, 9 Am. St. Rep. 245, 18 Pac. 658; *Dodge v. Smith,* 5 Kan. App. 742, 46 Pac. 990; *Chicago Title etc. Co. v. O'Marr,* 18 Mont. 568, 46 Pac. 810, 47 Pac. 4; *Armstrong v. Ford,* 10 Wash. 64, 38 Pac. 867; *Wm. B. Grimes etc. Co. v. McKee,* 51 Kan. 704, 33 Pac. 594.) Such mortgages are not void as to any subsequent purchaser who takes them with notice; and these subsequent mortgagees all had notice. For the plaintiff had a right to take possession under that clause and that possession was good against any person occupying with no better right than they themselves had. (*Bank of Woodland v. Duncan,* 117 Cal. 412, 49 Pac. 414; *Park v. Parsons,* 10 Utah, 330, 37 Pac. 571; *First Nat. Bank of Okosche v. Teat,* 4 Okla. 454, 46 Pac. 474; *Whittemore v. Fisher,* 132 Ill. 243, 24 N. E. 636.) Effect of recording and not filing. The statute of Idaho in the Revised Statutes, page 181, requires these chattel mortgages to be recorded. It is said that in 1891 the statute was changed

providing for filing and leaving the document with the recorder. But as above stated, each of the subsequent mortgagees had absolute notice. (See pp. 168, 214, 221.) No record or filing was necessary against the parties or subsequent purchasers or mortgagees having notice. (*Fette v. Lane* (Cal.), 37 Pac. 914; *American Lead Pencil Co. v. Champion,* 57 Kan. 352, 46 Pac. 696; *W. B. Grimes Dry Goods Co. v. Mc-Kee,* 51 Kan. 704, 33 Pac. 594.) Marshall Field & Co. were estopped to deny the validity of the prior mortgage which was mentioned in their mortgage and contracted to be paid therein. (*Dodge v. Smith,* 5 Kan. App. 742, 46 Pac. 991; *Leland v. Collier,* 34 Mich. 421.)

Kingsbury & Parsons, for Respondents.

The act of March 13, 1891, page 181, First Session Laws, requires that the mortgage be filed in the office of the county recorder, "to be kept there for the inspection of all persons interested; . . . . provided, that if the mortgagee receive and retain actual possession of the property mortgaged, he may omit the filing of his mortgage during the continuance of such actual possession." The courts have no right, no power, to extend a statute so as to dispense with any of the conditions the legislature has seen fit to impose. If we should once begin an attempt to relieve a party in cases of hardship, the law would be in danger of being frittered away and its benefits be entirely lost to the community. Statutes of a similar character in other states have been so construed as to hold parties to a strict performance of the conditions on which the validity of the mortgage depends. (*Gassner v. Patterson,* 23 Cal. 301, citing *Chenyworth v. Daily,* 7 Ind. 284; *Divver v. McLaughlin,* 2 Wend. 596, 20 Am. Dec. 655, and note; *Clayborn v. Hill,* 1 Wash. (Va.) 177, 1 Am. Dec. 452; *Meyer v. Gorham,* 5 Cal. 322; *Dufficy v. Shields,* 63 Cal. 332; *Stewart v. Platt,* 101 U. S. 738.) A chattel mortgage, where possession is not given, is void as against mortgagor's creditors if not put on file in the proper office. (*Wallen v. Rossman,* 45 Mich. 333, 7 N. W. 901; *Ward v. Watson,* 24 Neb. 595, 39 N. W. 615.)

A. F. Montandon, for Interveners.

Interveners had a right to follow the mortgaged goods wherever found, and if plaintiffs converted them to interveners' damage, they should account and the judgment should be affirmed. The insolvency of the Alturas Commercial Company is clearly demonstrated. Plaintiffs are liable for any prejudicial act of theirs to interveners as subsequent mortgagees. (Coffey on Chattel Mortgages, sec. 1046; *Russell v. Lau,* 30 Neb. 805, 47 N. W. 193.) In the light of the facts plaintiffs' mortgage is void in law and in fact as to the Simmons Hardware Company and the Standard Oil Company, defendants in this cause. (*McDonald v. Swisher,* 57 Kan. 205, 45 Pac. 593, 595.)

Action by Wells, Fargo & Co. and others against the Alturas Commercial Company and others. T. S. Merchant & Co. and others intervene. Judgment for defendants, and plaintiffs appeal. Affirmed as to certain defendants, and reversed as to others.

On September 15, 1894, the Alturas Commercial Company, a corporation doing business at Hailey, Alturas county, Idaho, executed a chattel mortgage upon a stock of general merchandise, fixtures, and other chattels in said town of Hailey to the plaintiffs Wells, Fargo & Co. and Fred J. Keisel & Co., the appellants here, to secure a note of that date to Wells, Fargo & Co. of $6,806.63, and one note of same date to Fred J. Keisel & Co. for $3,472.65, both notes due thirty days after said date. Said mortgage was recorded in the office of the county recorder in and for Alturas county on the eighteenth day of September, 1894, but was not filed of record in said county recorder's office until the thirty-first day of October, 1894. Said mortgage provided that the mortgagor might remain in possession of the mortgaged property, and sell same in the usual course or manner of trade, as the agent of the mortgagees, applying the proceeds of the sales, less the expense of making them, to the payment of said notes. On October 16, 1894, the Alturas Commercial Company executed another mortgage on the same chattels to the defendants Marshall Field & Co. to secure a note dated October 15, 1894,

for $1,761.44, due thirty days after date, and in this mortgage it is recited as follows: "And after a prior lien and chattel mortgage on said stock of goods, made by said first parties on the fifteenth day of September, 1894, to Wells, Fargo & Co. and Fred J. Keisel & Co., has been satisfied, the said first party may sell, and continue to sell, said goods, wares, and merchandise in the usual course and manner of trade as the agent of said second parties, and apply the proceeds of such sales, less the expense of making them, to the payment of said note"—which mortgage was recorded in said county recorder's office October 16, 1894, but not filed of record until November 1, 1894. On October 23, 1894, said Alturas Commercial Company executed a mortgage on the same chattels to the interveners, Henry W. King & Co., Thatcher Milling & Elevator Company, and the Siegel Clothing Company, to secure notes due sixty days after said date for the sums of $1,058, $417.66, and $783, respectively, which mortgage recited that it was subject, "however, to valid prior rights wherever the same may be found." This mortgage provided that the mortgagor might retain said chattels, and "sell said goods, wares, etc., in the usual course of trade, as the agent of said mortgagees, and apply the proceeds thereof in payment of said notes, though neither of them may then be due; mortgagees, and each of them, to pay to mortgagors out of said proceeds, and not otherwise, the necessary expenses of making such sales." This mortgage was filed of record in said county recorder's office October 24, 1894, at 12:25 o'clock P. M. On October 23, 1894, said Alturas Commercial Company executed a mortgage upon said chattels to the intervener, the California Powder Works, a corporation, to secure a note of said date for the sum of $1,800, due sixty days after date, "subject to prior valid rights, wherever the same may be found," which mortgage provided that the mortgagor might remain in possession, and sell the chattels in the usual course of trade, applying the proceeds, less expenses of sale, on said note, and which mortgage was filed of record in the office of said county recorder October 24, 1894, at 12:20 o'clock P. M. On October 26, 1894, said Alturas Commercial Company executed to the in-

tervener T. S. Merchant a chattel mortgage on said chattels to secure a note of that date for $740, "subject to prior valid rights, wherever the same may be found, which mortgage provided that the mortgagor might remain in possession and sell the chattels in the usual course of trade, applying proceeds, less expenses of sale, on said note; and which mortgage was filed of record in said county recorder's office October 26, 1894, at 2:45 o'clock P. M. October 22d and 23d the defendants Simmons Hardware Company, Paxton & Gallagher, Tootle, Wheeler & Motter, and the Standard Oil Company, respectively, obtained attachments in suits brought by them as plaintiffs against the Alturas Commercial Company as defendant, and caused portions of said stock of merchandise to be seized and levied upon by the defendant Jackson, as sheriff of Alturas county. Each of said mortgages provided for reasonable attorney fees in case of foreclosure. The plaintiffs took possession of the mortgaged property which had not been seized under said attachments on the twenty-seventh day of October, 1894, inventoried the same, and sold the same, some at wholesale, and some at retail, paying out of the proceeds the expenses of making the sales. There being a balance unpaid on said mortgage debts to the plaintiffs, they commenced this action against the Alturas Commercial Company, Simmons Hardware Company, Paxton & Gallagher, Tootle, Wheeler & Motter, and A. J. Jackson on the thirty-first day of October, 1894, to foreclose said mortgage. The defendant Alturas Commercial Company did not answer. The defendants Marshall Field & Co. answered, and set up their mortgage, and claimed priority of lien as against the plaintiffs. The other mortgagees' names came into the action as interveners, and by their complaints in intervention set up their respective mortgages, charged waste against plaintiffs, and claimed prior liens to plaintiffs, and demanded an accounting from plaintiffs. The defendants, Paxton & Gallagher, Tootle, Wheeler & Co., and Kuh, Nathan Fisher Company on the trial abandoned the action and the claims to attachment liens on the mortgaged chattels. The court tried the cause without the intervention of a jury, made numerous findings

of fact, and rendered judgment in favor of defendants and interveners and against plaintiffs, as follows: Dismissing the action as against the defendant Jackson and the attaching creditor defendants, and for recovery by the defendants, Marshall Field & Co. of the sum of $1,761.44, with interest thereon at the rate of seven per cent per annum from October 15, 1894, and $175 attorney fees; and to the intervener the California Powder Works in the sum of $1,800, with interest thereon at the rate of ten per cent per annum from October 24, 1894, and $175 attorney fees; to the interveners Henry King & Co., Thatcher Milling & Elevator Company, and the Siegel Clothing Company the respective sums of $1,058, $417.66, and $783, with interest to each on said respective amounts at the rate of ten per cent per annum from October 24, 1894, and attorney's fees in the sum of $175; to the intervener T. S. Merchant the sum of $740, with interest thereon at the rate of ten per cent per annum from October 26, 1894, and attorney's fees in the sum of $100. The plaintiffs moved for a new trial, which was denied. The order denying a new trial was lost from the files, but its existence and loss is sufficiently proven by numerous affidavits. The evidence is set forth in full in the record. It was admitted on the trial that the mortgages of the interveners were taken with knowledge of the existence of plaintiffs' mortgage, and with the understanding that their mortgages were subject to the mortgage of the plaintiffs. The trial court held the mortgage of plaintiffs to be fraudulent and void, and charged the plaintiffs with the gross amount of the sales made by the mortgagor while it was in possession, and with the payments made to plaintiffs by the mortgagor, and with the inventory of the goods made at the time that plaintiffs took possession of that portion of the mortgaged property that had not been sold or attached, and with some of the mortgaged chattels which are yet unsold. This appeal is from the order denying a new trial, and from the judgment.

QUARLES, J. (After Stating the Facts.)—It is conceded by the appellants that the judgment, in so far as it dismissed the action against the attaching creditors Simmons Hardware

Company and Standard Oil Company, and A. J. Jackson, sheriff, was proper. This eliminates from the consideration of this case all questions as to the validity of the mortgages in question as against attaching creditors, and brings us to the question of the rights of the mortgagees as among themselves. No question of purchase without notice arises. It is conclusively shown by the record that the defendants and interveners holding mortgages on the mortgaged chattels in question took their mortgages with actual notice of the existence of the mortgage of plaintiffs, and with the express understanding that their mortgages were subject to the mortgage of the plaintiffs. A mortgagee who takes a mortgage on property which is already mortgaged with actual notice of such mortgage, and agrees that his lien shall be subject to such former mortgage, takes subject to such former mortgage, although the latter may not have been filed of record in the county recorder's office of the county in which the mortgaged property is situated, as required by statute, at the time of the execution and filing of the latter mortgage. It is contended by the junior mortgagees that the mortgage to the plaintiffs is void, for the reason that it was understood between the mortgagor and plaintiffs, at the time the mortgage was given, that the mortgagor should buy new goods out of the proceeds of sales of the mortgaged chattels, and might pay old debts out of same. If this contention was sustained by the evidence, it would result that the mortgage was intended to enable the mortgagor to continue business, and hold its creditors off, thus delaying them. A mortgage given with such intent or for such purpose would be void under our statutes. We have carefully examined the evidence and the entire record, which is very voluminous, and do not think the evidence sufficient to sustain this contention. Neither of the officers or agents of the plaintiffs were present when the mortgage was executed. It was drafted in Utah, by the attorney for the plaintiffs, and sent to the mortgagor, for execution, through the mails. There is some evidence—unsatisfactory, however—showing that agents, not only of plaintiffs, but of the junior mortgagees, knew that some of the proceeds of the sales were being applied to pur-

chasing new goods to replenish the stock. As to this condition, no complaint appears to have been made by any of the mortgagees, all of whom knew, or had the means of ascertaining, what was being done with the proceeds of the sales of the mortgaged chattels by the mortgagor; and neither of them is in any better position than the others. The junior mortgages are, in substance and effect, the same, as to the terms and conditions, as that of the plaintiff's. This being true, and each of them having been taken with actual notice of plaintiffs' mortgage, and expressly subject thereto, neither of the junior mortgagees are in position to question the validity of the mortgage of plaintiffs. All of them being on the same footing, they must stand or fall together. Conceding that each of the mortgages in question here is void as against attaching creditors or *bona fide* purchasers without notice, yet as between the parties to these mortgages, and as among the different mortgagees here, each of the mortgages in question are valid, the priority of one over another depending alone upon the time of the execution and delivery of the mortgages, respectively. The priority in this case, as shown by the record, is as follows: 1. Mortgage of the plaintiffs; 2. That of defendants Marshall Field & Co.; 3. That of California Powder Works; 4. That of Henry King & Co., Thatcher Milling & Elevator Company and Siegel Clothing Company; 5. That of T. S. Merchant. Under the facts of this case, the junior mortgagees, and each of them, are estopped from questioning the validity of the mortgage to the plaintiffs.

The plaintiffs must account in this action for what was paid on their mortgage debt by the mortgagor, and also for the proceeds of sales made by plaintiffs under their mortgage, whether for cash or on credit, from which the actual and reasonable expenses of making such sales shall be deducted. And judgment foreclosing plaintiffs' mortgage must be made and entered, and the proceeds of sale of the mortgaged property, less the expenses of making the sale, either by said private sales or under the judgment of foreclosure, shall be applied on the mortgage debts aforesaid in the priority above named. The judgment is affirmed as to the defendants

Simmons Hardware Company, Standard Oil Company, and A. J. Jackson, and is reversed as to all of the other parties, and the cause remanded to the district court for further proceedings consistent with the views herein expressed. Inasmuch as the transcript in this case is not made up, arranged, and printed in the manner required by the rules of this court, the same not being arranged in chronological order, and containing the title of the cause a number of times, numerous affidavits of verification, and the stenographic minutes of the court reporter, the cost of procuring and printing said transcript will not be allowed to the appellants, but appellants are allowed all other costs of appeal.

Huston, C. J., concurs.

Sullivan, J., owing to sickness, was unable to sit at the hearing, and took no part in the decision.

### ON REHEARING.

### (March 3, 1899.)

HUSTON, C. J.—The petition for rehearing presents no question which was not fully considered either on motion to dismiss or on the original hearing. The motion to dismiss was based upon the ground that briefs were not served within the time required by the rules, and that the transcript was not in chronological order, which motion was denied. It is now insisted that the court should, of its own motion, have dismissed the appeal, for the reason that no evidence of service of appeal is contained in the transcript. A complete answer to this contention is that the appellants, on suggestion of diminution of the record, were permitted to bring up a certified copy of the original notice of appeal and proof of service thereof, from which it appears that the notice of appeal was served upon all of the defendants and interveners. We are fully convinced that the decision herein is correct, and, no reason being shown why a rehearing should be granted, the petition therefor is hereby denied.

Quarles, J., concurs.

Sullivan, J., took no part in the decision.